# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| COYOTE LOGISTICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 16 C 6371 |
| | ) | |
| AMC CARGO INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant AMC Cargo Inc.'s ("AMC") motion to vacate Plaintiff Coyote Logistics, LLC's ("Coyote") default judgment entered on September 19, 2016. For the following reasons, the Court grants AMC's motion.

## BACKGROUND

This lawsuit derives from AMC's alleged failure to deliver a shipment of beer to the consignee. Coyote is a licensed property broker by United States Department of Transportation, Federal Motor Carrier Safety Administration ("FMCSA"). According to Coyote, on or about May 29, 2015, in its capacity as a broker, it entered into a contract with AMC by which AMC would transport a freight of Heineken beer ("the shipment") from New Jersey to Illinois. Coyote further alleges that when it tendered the shipment to AMC for delivery it was in good order, good condition, and correct quantity. Coyote maintains that AMC never delivered the shipment to the

consignee. On June 20, 2016, Coyote filed this lawsuit pursuant to the Carmack Amendment - a law governing interstate shipment and cargo loss. 49 U.S.C. § 14706. Coyote seeks to recover $27,457.04.

Coyote served AMC's Registered Agent, Marek Tomczyk ("Tomczyk"), on June 22, 2016, with a copy of the Complaint. AMC was required to file an appearance and an answer by July 13, 2016. It failed to do either. Therefore, on August 18, 2016, this Court granted Coyote's motion for an order of default. With no appearance or answer from AMC, on September 19, 2016, this Court granted default judgment in favor of Coyote. On November 4, 2016, AMC made an appearance on the record and moved to vacate the default judgment.

AMC contends that it did not receive notice of the lawsuit until September 21, 2016. According to Arek Cyran ("Cyran"), the principal of AMC, he received an email from Coverall Agency Inc. ("Coverall"), notifying AMC of the motion for default judgment. AMC alleges that, immediately after receiving the email, Cyran attempted to retain legal counsel, a feat made more difficult because he only speaks Polish. The first two Polish-speaking lawyers that AMC contacted were unable to represent it based on conflicts of interest with Coyote. On October 28, 2016, AMC secured the assistance of counsel, and on November 4, 2016, filed the present motion to vacate default judgment, which we grant.

## **LEGAL STANDARD**

Fed. R. Civ. P. 55(c) and 60(b) govern motions to vacate default judgments. *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 44–45 (7th Cir. 1994). The standards for evaluating a motion to vacate under Rules 55(c) and 60(b) are the same for all practical purposes, *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003), although they are applied more stringently when a party wishes to vacate a judgment rather than a mere order. *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994). Rule 60(b)(1) permits relief from judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." *Easley v. Kirmsee*, 382 F.3d 693, 697 (7th Cir. 2004).

Relief from a judgment under Rule 60(b)(1) is "an extraordinary remedy and is granted only in exceptional circumstances." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1204–05 (7th Cir. 1984). To receive relief from a default judgment, AMC bears the burden of establishing: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (citing *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007)). A decision related to default judgment should consider the well-established principal that favors a trial on the merits above a default judgment. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009); *Sun*, 473 F.3d at 811.

**DISCUSSION**

**I. Good Cause**

Under Rule 60(b)(1), good cause can include "excusable neglect," which encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). The Seventh Circuit uses a "limited and stringent" definition of "excusable neglect" under Rule 60(b)(1), which "requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing" the judgment. *Jones*, 39 F.3d at 162.

AMC does not allege that Coyote erred in service; instead, it claims that its registered agent, Tomczyk, never informed AMC of this litigation. Coyote argues that because it properly served Tomczyk, any failing on his part to forward the complaint or the summons to AMC is "legally insufficient to support a motion to vacate." (citing *J & J Sports Productions, Inc. v. Weiner*, 2014 WL 1096171 (E.D. PA. Mar. 20, 2014)).

However, *J & J Sports Productions* is non-binding and distinguishable. In that case, the court denied a motion to vacate default judgment under Rule 60(b)(1) because the defendant did not "set forth any legal argument" in support of its motion and because it did not address the two additional factors beyond good cause. *Id*. at *3. Here, AMC provides a legal argument supporting good cause for its default. It also

addresses the two additional factors necessary to support a motion to vacate default judgment.

Even though AMC's default judgment derives from its registered agent's failure to notify it of the pending litigation, we find that AMC has demonstrated excusable neglect. The degree to which a party's or its agent's carelessness can be termed excusable neglect is a matter largely within the discretion of this Court. *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997). Generally, a client is bound by his chosen agent's deeds. *U.S. v. 8136 S. Dobson St., Chi., Ill.,* 125 F.3d 1076, 1084 (7th Cir. 1997). However, in determining whether a defendant has established good cause for its default, courts should consider whether it "willfully ignore[d] the pending litigation." *Wehrs*, 688 F.3d at 890 (finding good cause when a defendant's counsel failed to provide him with the deadline for a pleading); *Cracco*, 559 F.3d at 629–31 (finding good cause when a registered agent forwarded the summons and the complaint to an employee who "did not understand their significance").

AMC did not act willfully in ignoring the litigation. Similar to the defendant in *Cracco*, AMC "should have taken measures to ensure that service of process on its registered agent was forwarded to the appropriate employee." 559 F.3d at 631. However, there is no evidence that AMC intentionally failed to respond to the Complaint. *Id.* Like the defendant in *Cracco*, AMC's behavior, once becoming aware of the pending litigation, suggests that its default was due to inadvertence,

5

rather than willful ignorance. *Id.* AMC filed its motion to vacate judgment just six days after securing counsel, which is less than the eight days taken by the defendant in *Cracco*. *Id.* In addition, nothing in the record suggests a pattern of disregard for the Court's orders. *See Passarella*, 810 F.2d at 677 (suggesting that a "willful pattern of disregard for the court's orders and rules" supports the absence of good cause). Since filing an appearance, AMC has complied with every deadline imposed by the Court. Therefore, AMC has demonstrated good cause for its default.

## II. Quick Action

AMC contends that Cyran acted diligently because, upon notification of the litigation, he took immediate actions to secure counsel. Coyote, basing its contentions upon its proper service, does not contest this argument. "What constitutes 'quick action' varies from case to case" and relies heavily upon the specific circumstances of the case. *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 861 (7th Cir. 2016). "In some cases a delay of even a few weeks is unacceptable." *Jones*, 39 F.3d at 158. "In others, a ten-week delay is still considered prompt action." *Sullivan*, 2007 WL 1030236, at *4 (citing *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 797–98 (7th Cir. 1980)). The action that a party takes after notification of the litigation should be what courts use in determining whether a defendant acted quickly. *Trade Well Int'l*, 825 F.3d at 861. Therefore, our inquiry begins when AMC received notification of the default judgment from Coverall.

AMC began to search for counsel immediately once it gained knowledge of the lawsuit. However, for various reasons it took six weeks to obtain representation. Because Cyran only speaks Polish, his pool of potential attorneys was limited. The first two Polish-speaking attorneys that Cyran attempted to retain were unable to assist AMC based on conflicts of interest. Cyran found a third attorney, one who was willing to take the case, on October 28, 2016. Once AMC acquired counsel, it took only one week for its attorney to make an appearance and to file a motion to vacate judgment. Therefore, AMC took quick action.

## III. Meritorious Defense

As a meritorious defense, AMC contends that it did not enter into a contractual agreement with Coyote to transport the shipment. In response, Coyote raises two arguments. First, Coyote alleges that AMC did not provide "evidence of a meritorious defense" but merely provided statements "wishing and hoping" for a meritorious defense "with no reasonable basis." Second, Coyote contends that AMC's defense does not shield it from liability because AMC's defense does not directly address any of the three enumerated issues in a Carmack suit.[1] We address these two contentions separately in determining the sufficiency of AMC's defense.

First, Coyote correctly asserts that a party must provide evidence to support a meritorious defense. The evidence must develop a legal and a factual basis for a meritorious defense, beyond general statements. *Cracco*, 559 F.3d at 630. This basis

---

[1] To hold a carrier liable under 49 U.S.C. § 14706 the plaintiff must show that: (i) the goods were in good condition when given to the shipper; (ii) the goods were damaged when delivered (or were not delivered); and (iii) the amount of damages.

7

requires a party to provide more than "bare legal conclusions" but "less than a definitive showing that the defense will prevail." *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014). Here, AMC alleges more than simple conclusory legal statements to bolster its meritorious defense.

In support of its defense, AMC notes that although the Rate Confirmation[2] provided by Coyote lists AMC, it lacks a signature by AMC. Additionally, AMC produces evidence that a different company altogether entered into the agreement with Coyote to transport the shipment. In Cyran's supplemental affidavit, AMC alleges that Highway Xpress ("Highway") offers similar services and maintains offices in the same building as AMC. AMC notes that the Bill of Lading for the shipment provided by Coyote lists Highway as the transporter. Furthermore, AMC provides a separate Bill of Lading for the same shipment. Here, "Highway" is crossed out as the transporter and "AMC Cargo" is handwritten in its place. Cyran alleges to have found this separate Bill of Lading in the common office space that Highway and AMC share. Moreover, Cyran's supplemental affidavit contends that, after speaking with AMC's drivers, he was unable to find anyone with whom Coyote had contracted to transport the shipment in question. These statements and documents provide the necessary evidentiary support to establish a meritorious defense.

Finally, Coyote asserts that AMC's defense does not directly address any of the three elements involved its Carmack suit. *REI Transport, Inc. v. C.H. Robinson*

---

[2] A rate confirmation is a document that is given to a carrier by a freight broker that lists all the pertinent information related to the load being transported.

8

*Worldwide, Inc.*, 519 F.3d 693, 697–98 (7th Cir. 2008). Here, AMC disputes the existence of any contract with Coyote relating to the shipment, or that a shipment even took place. Moreover, AMC has given a legal and a factual basis for its meritorious defense, beyond general statements. *Cracco*, 559 F.3d at 630. At this legal juncture, AMC has satisfied the allegations pertaining to shipment. Therefore, AMC has a meritorious defense.

## **CONCLUSION**

For the aforementioned reasons, AMC's motion to vacate is granted. AMC has thirty days to answer or otherwise respond to the Complaint. It is so ordered.

ENTER:

*/s/ Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

DATE: May 9, 2017